**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

IN RE:                                                                                                   CHAPTER 11

    ELEMENTAL PROCESSING, LLC                                    CASE NO.   20-50640-tnw

    DEBTOR

## AFFIDAVIT OF TONY STRUYK, PROPOSED DESIGNATED SPOKESPERSON OF DEBTOR IN SUPPORT OF FIRST DAY MOTIONS

Comes Affiant, **TONY STRUYK**, after first being duly sworn, states and deposes as follows:

### Background of Debtor

1.    I am the Chief Executive Officer, Chief Financial Officer and co-owner of Elemental Processing, LLC, (the "Debtor") since its inception to the present. I own 27.5% of the membership interest with Jeffrey A. Lake, who also holds 27.5%. I own and control Montecito Capital Management, Inc., of 1262 Scott Street, San Diego, CA 92106, which owns 45% of the Debtor. I am the proposed court-ordered Designated Representative of the Debtor and have specific information and knowledge concerning the statements made in this Affidavit. I am over the age of 18 and of sound mind.

2.    On April 20, 2020 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under Chapter 11 of the United States Code (the "Code"). The Debtor's business is currently being operated by the Fayette County Master Commissioner, James Frazier, as receiver, pursuant to an appointment on March 13, 2020, in the case styled, *Amerra Capital Management, LLC, v. Elemental Processing,* Fayette Circuit Court, Case #20-CI-907. After Amerra Capital filed its verified complaint to foreclose against the tangible

assets of the Debtor, it also filed a verified motion for the appointment of a receiver on March 9, 2020. On March 12, 2020, the Debtor filed a verified objection as to factual allegations thereof, including the assertion of a non-waivable conflict of interest of Amerra Capital's counsel. The state court judge made a determination based upon the verified motion without taking any live testimony and granted same, notwithstanding the verified objection. James Frazier was appointed as receiver on March 13, 2020. For the last month, I have been informed that the employees were requested by the receiver to work on site and have not been paid. I have been informed that the receiver has received a notice of default by the landlord, Capstone Group, LLC, of 2201 Regency Road, Suite 602, Lexington, KY 40503 but has not attempted to cure or pay rent. By letter dated April 8, 2019 [sic], Capstone's representative gave notice of termination of the lease dated October 5, 2017, and the Debtor seeks to cure all monetary and non-monetary defaults immediately and to stay current going forward. The receiver's designee, Mr. Robert W. Leasure, has substantially impaired the value of the Debtor and the state court receiver should be required to turn over property of the estate pursuant to 11 U.S.C. §543, and to authorize the Debtor's original managers, being Mr. Lake and/or myself, to operate the Debtor. The Debtor's owners desire to operate its business as a debtor and debtor-in-possession pursuant to Code §§ 1107(a) and 1108.

    3.    The secured creditors[1] are as follows:

- 2018-08-17 UCC-1 filed by John Deere on certain equipment
- 2018-12-05 UCC-1 filed by Crown Equipment on all leased equipment
- 2019-08-23 UCC-1 filed by Amerra Capital Management on all assets
- 2020-01-27 UCC-1 filed by Mokena Holdings on all assets with PMSI

---

[1] This Affidavit does not constitute an admission by the Debtor of the validity, enforceability or other *bone fide* security status of any secured creditors, but rather the mere opinion of the Affiant to assist this Court in the approval process of the First Day Motions. The Debtor has listed and identified Dynasty Farms, LLC, MJ83 Holdings, LLC, and Strategic Compensation Group, LLC, as secured creditors but no UCC-1 Financing Statement was found in the Secretary of State's website.

- 2020-02-27 UCC-1 filed by AB Sciex LLC on all invoiced items reported

And the other secured creditors who have not filed a UCC-1 Financing Statements with the secretary of state's office are as follows:

- Brad Lebsock
- Bibicarri Consulting
- Dynasty Farms
- Heathray
- Jade Partners
- Strategic Compensation
- Troy Lindstrom

4. **Historical Background**: The Debtor is a Kentucky corporation with headquarters at leased premises located at 2120 Capstone Drive, Suite 111, Lexington, KY 40511-8926. Since being formed in May of 2017, Elemental Processing has been a licensed Industrial Hemp grower, processor and handler participating in the State of Kentucky's Industrial Hemp Pilot Program sanctioned under the United States 2014 and 2018 Farm Acts and the Kentucky Department of Agriculture ("KDA"). Elemental Processing extracts Cannabidiol ("CBD") and other cannabinoids from the hemp plant and processes them into crude oil, refined oil, isolate powder and other bulk CBD formulated products. Elemental Processing obtains its hemp plant material primarily from its contracted farmers in states ranging across the United States. All hemp plant material is extracted and refined at Elemental Processing's 42,000 square foot facility in Lexington, Kentucky. The Lexington facility uses supercritical CO2 extraction and has the capacity to process over 2,000,000 pounds of hemp bio mass a year resulting in over 40,000 Kilograms of bulk CBD ingredients. The CBD produced in Lexington is sold to customers manufacturing retail CBD products for the nutraceutical, food and beverage, health and beauty and pet industries.

5. **Critical Background**: A complaint and motion for receivership was filed by Amerra Capital Management, LLC, in the Fayette Circuit Court for the Debtor's failure to pay

$250,000 in February 2020. The state court judge appointed the receiver to operate the business operations with the powers and authorities set forth in KRS 425.600. Since that date, the receiver retained Mr. Robert W. Leasure to assist him in continuing to operate the business. After the court was apprised of various events leading up to the receiver giving a copy of the key to the landlord in mid-April 2020 and the layoff of most, if not all, of the Debtor's employees, the Fayette Circuit Court entered an order dated April 17, 2020, scheduling a hearing for April 24th to discuss the viability and/or liquidation of Elemental Processing. Because of the receiver's designee allowing the lease to go into default without attempting to cure it and because of the state court order seeking further action to dispose of the assets, this chapter 11 bankruptcy was the only viable option to protect the assets and restructure its business for the benefit of all creditors and the estate.

6. **Effective Reorganization:** At the present time, the building lease has been terminated by letter dated April 8, 2019 [sic] by Capstone Group 2100 LLC. The Debtor seeks to file an emergency motion for authority for the reinstatement of the lease. The Debtor's main assets are located in the Capstone premises in Lexington, Kentucky, and an eviction will result in zero being repaid to the creditors. The Debtor believes the value of its assets far exceed the debts owed to secured and unsecured creditors, not including equity holders as audited financials show.

7. In August 2018, the Debtor received a working capital line of credit for $15,000,000 with Amerra Capital Management, LLC. $8 million was initially funded, then the business started expansion and furthered the farming operations. Amerra Capital changed its position on the Hemp space and refused to fund the additional $7 million. The Debtor had already committed to spending most of the $7 million, but since Amerra Capital refused to fund the balance, the Debtor was forced to use its capital to satisfy existing obligations. This position left the Debtor in approximately $3 million shortfall, which more importantly, created an

unsustainable financial situation for the business in not being able to pay obligations as needed. This caused the owners to restructure the company model after becoming two months in arrears with Amerra Capital. Sales were being generated and some additional time would have allowed the Debtor to make payments. Amerra Capital refused any delay and demanded the $8 million in full. The Debtor requested 90 days for refinance, but to no avail. Amerra Capital filed its complaint and requested a receiver be appointed, mistakenly arguing that the Debtor was not operating the business properly and was dissipating assets. The Debtor opened a bank account that was not linked to Amerra Capital to preserve the assets from seizure, but the receiver obtained all funds upon appointment. The receiver has allowed me to be present during regular business hours and I have witnesses his actions, or inaction. His actions are consistent with the shutting down the business and working toward a liquidating process. The following are my personal observations:

(i) The receiver determined the inventory was still there as was disclosed in December 2019 and that nothing was missing;

(ii) On day one of the receiver's appointment, there were three people to oversee the operations, all of whom operated under the receiver's designee, Mr. Robert W. Leasure. In less than one week, the receiver's designee had one person to manage this multi-million dollar operation. Within the next two weeks, no one from the receiver's office was present at the business and they were not directing, managing, operating or guiding any employee as to work. I have estimated that the receiver's designee was present no more than six hours per week following the first week.

(iii) The receiver's designee has not performed any act to earn money or to attempt to operate profitably. On the first day on the job, the receiver called some customers for receivables but never tried again.

(iv) The receiver's designee has never spoken to any sales person or even asked which employees were sales people.

(v) The receiver's designee has ignored every critical aspect of the operation that the employees have suggested that was essential to the sustainability of the business. A perfect example from day one was to protect the lease from termination. The landlord has attempted to break the lease with regular default notices, all of which the Debtor satisfied prior to the appointment of the receiver. Once the receiver was in place, no action was taken to protect or cure any issues. I made multiple reminders by email and called the designee of this issue, but the designee did the

opposite from any normal business decision. The designee intentionally and purposely allowed the lease to go into default and provided the landlord with a key. The landlord gave written notice of default and potential cancellation, and the landlord issued a termination notice on April 8th. The other facility we store hemp at needed rent of $4000 in order to prevent surrender or forfeiture of the stored assets, but the designee never paid that rent. This is an example of how the designee failed to protect the assets on hand.

(vi)   The receiver's designee have not spent any money toward the business operation, including safety equipment amid the State of Emergency by Governor Beshear's executive orders relating to COVID-19.

(vii)  The receiver's designee has not ask any high level management employees as to what the current business operations were going on, or to what products were being manufactured, and for whom and how much. These basic and essential questions that should have been asked are examples that the designee has no intention of operating the business successfully.

(viii) At the present time, there is no security to keep assets from being secured.

(ix)   The designee has informed the factory manager to fire everyone and to shut down the operations without providing any essentials or basics facts to do so. No funds have been spent on fuel to run the forklifts or trucks.

(x)    It has become clear to me that the designee's intention has been to close the business and liquidate.

(xi)   All of this has happened after the announcement from President Trump of CARE Act, which could have infused hundreds of thousands of dollars into the business without harming any secured creditor. The receiver's designee has not submitted any application for such forgiveness loan.

(xii)  I have expended tens of millions of dollars into this company and have a desire and incentive to make it profitable, along with preserving 70+ jobs of central Kentucky employees. Finally, Elemental Processing is viewed nationally as a leader in the production of top of the line qualify CBD oil.

Further, Affiant Sayeth Naught.

ELEMENTAL PROCESSING, LLC

BY:   /s/ Tony Struyk
**TONY STRUYK**
CEO and CFO and Authorized Agent,
Officer or Director and Member

| | |
|---|---|
| COMMONWEALTH OF KENTUCKY | } |
| | ) |
| COUNTY OF FAYETTE | } |

     Sworn to and acknowledged by TONY STRUYK**,** in his capacity as the CEO, CFO and authorized agent, officer, director or member of Elemental Processing, LLC, on this the 20th day of April, 2020.

My Commission Expires: August 31, 2021
My Notary ID: #583753

                                    /s/ Matthew B. Bunch
                            NOTARY PUBLIC, KY STATE AT LARGE