# DEBTOR IN POSSESSION – LETTER OF INTENT

This non-binding Letter of Intent for Debtor-in-Possession Financing, dated April 23rd, 2020 to Elemental Processing, LLC (the "DIP Financing") by Spencer Stein (New LLC to be formed), or its affiliates or assigns in connection with the bankruptcy case filed in the United States Bankruptcy Court for the Eastern District of Kentucky Case No. 20-50640-tnw (the "Bankruptcy Case")

| | |
|---|---|
| **BORROWER:** | Elemental Processing, LLC. (collectively, the "Debtor" or the "Borrower"). |
| **LENDER:** | Spencer Stein (New LLC to be formed), the Lender or affiliates thereof and/or other lenders, to be designated at closing. |
| **COMMITMENT AVAILABILITY AND PURPOSE:** | The DIP Financing shall be a secured term loan credit facility of up to $500,000 for which Lender will receive protection under Sections 364(c)(1), (2) and (3) of the Bankruptcy Code. $250,000 will be available upon entry of the Interim DIP Order and up to an additional $250,000 upon entry of the Final DIP Order, with all remaining funds to be available in accordance with the Budget (defined below). The DIP Financing is being provided to fund the Debtor's general operating, payment of bankruptcy court approved Receiver fees and costs, and working capital needs in the ordinary course of business and the administration of the Bankruptcy Case, consistent with a budget (the "Budget") approved by Lender. None of the proceeds of the DIP Financing shall be used to pay the expenses of the Debtor or any Creditors' Committee in any action or to otherwise assert any claims or causes of action against the Lender in any capacity. |
| **TERM AND MATURITY:** | The earliest of (a) April 30th, 2023; (b) the consummation of a sale(s) of all or substantially all of the Debtor's assets; (c) the entry of an order by the Bankruptcy Court approving an alternative DIP Financing; (d) the confirmation of a plan of reorganization for the Debtor, (e) such later date as the Lender in its sole discretion may agree to in writing with the Debtor, and (f) termination of the Debtor's right to use cash collateral (the "Maturity Date"). Availability of DIP Financing shall terminate immediately and prior to the Maturity Date upon the occurrence of a "Termination Event," which is the earliest to occur of: (a) 20 days after the entry of the Interim DIP Order (unless a Final DIP Order approved by the Lender has been entered as of such date), (b) the expiration of five (5) business days (the "Default Notice Period") following the provision of written notice to the Debtor (with a copy of such notice provided to counsel |

1

(Debtor, counsel for any Committee, and the U.S. Trustee) upon the occurrence of an Event of Default (as defined in this Term Sheet), (c) the date on which neither the Interim Order nor the Final Order is in full force and effect, and (d) the Termination Date or an Event of Default having occurred under that certain Interim Order (a) Authorizing Post-petition Use of Cash Collateral, (b) Granting Adequate Protection to the Bank, (c) Modifying the Automatic Stay, (d) Scheduling a Final Hearing, and (E) Granting Related Relief, dated _____, 20__, as such order may be continued or incorporated in a final order (the "Cash Collateral Order"), unless the Bankruptcy Court, in connection with approval of the DIP Financing, authorizes the Debtors' continued use of the cash collateral of Lender.

**INTEREST RATE PAYMENTS, FEES AND EXPENSES:**

Interest Rate: 12%

Default Rate: In the event of (i) a default by the Debtor in (a) its payments to Lender or (b) its performance of its obligations under this Term Sheet, the Interim DIP Order or the Final DIP Order, or (ii) the occurrence of an Event of Default as described in this Term Sheet or the Loan Documents described below, additional interest of 5% will be added to the regular interest rate.

Payments: Payment of current monthly interest only payments, calculated on a 30/360 basis, shall be made until maturity or termination and shall be payable on the first (1st) day of each month in arrears.

Transaction Costs: Borrower shall be responsible for Lender's reasonable out-of-pocket expenses including documentation fees, outside legal fees (including the fees and expenses of Lender's bankruptcy counsel), appraisal fees, site visit fees, escrow, recording, and transfer fees and taxes, title charges, search and filing fees, survey costs, and all other expenses incurred in connection with this Term Sheet and the DIP Financing up to a maximum of $500,000 (the "Expense Cap"); provided, however that the Expense Cap shall not apply if there is an Event of Default under this Term Sheet or the Loan Documents described below but solely with respect to any efforts taken by Lender to enforce its rights and remedies thereunder and/or protect its interests after the occurrence of an Event of Default.

All loan documentation referenced in this Term Sheet shall be subject to the approval of Lender and its counsel, and all costs related to the negotiation and production of the documentation and protection of Lender's interests in the Bankruptcy Case, but subject to the Expense Cap, are to be reimbursed to Lender by Borrower upon closing, included in the Budget and thereafter paid within 10 days of invoice as a closing cost of this transaction.

Borrower shall be responsible for all of its own costs

**CONDITIONS PRECEDENT TO**
**CLOSING AND FUNDING:**      Budget. The Lender shall have received and approved the Budget.

Interim DIP Order. The Interim DIP Order and Final DIP Order shall have been issued in form and substance acceptable to the Lender within 20 business days after the Petition Date, and such Interim Order shall be in full force and effect and shall not have been vacated, stayed, reversed, modified or amended.

No Default or Event of Default. No Event of Default or Termination Date shall have occurred hereunder or under the Cash Collateral Order.

Loan Documents: The note evidencing the loan shall be secured by one or more promissory notes, loan agreements, mortgages, assignment of rents and leases, security agreement and fixture filing plus other documentation and financing statements deemed necessary to Lender which shall evidence a first lien covering all assets owned by Borrower and from time to time installed and/or used in the maintenance and operation of the Borrower. All of the foregoing arising out of the Property shall hereinafter be referred to as the "Spencer Stein Collateral".

Insurance. Evidence of adequate property, hazard and liability for the Property in amounts, with carriers and with endorsement in favor of Lender and satisfactory to Lender. Policies must provide 30 days advance notice to Lender of termination and must have an expiration date no earlier than Oct 1st, 2020.

**COLLATERAL**
**AND LIEN PRIORITY:**       The DIP Financing shall be secured by a first priority lien and security interest in and against all of the Debtor's right, title and interest in and to the Spencer Stein Collateral, which shall not be subject to any other mortgages, security interests or liens, including all pre-petition liens, claims or encumbrances. Any cash collateral arising from the Spencer Stein Collateral shall constitute part of the Spencer Stein Collateral and "Cash Collateral" as such term is used in the Bankruptcy Code, but shall not be considered cash collateral under the Cash Collateral Order. The Lender shall also be granted a security interest in all other assets of the Debtor, including real property, personal property, general intangibles, equipment, receivables, inventory, goodwill, intellectual property, licenses and the like (together with the Spencer Stein Collateral, the "DIP Collateral"); provided, however, that Lender's security interest in any assets of the Debtor, other than the Spencer Stein Collateral, that constitute DIP Collateral shall be superior to any prior lien

3

priority interest that Lender or any other entity has in such assets, and Lender shall not commence any action to foreclose against any real or personal property collateral (except as relates to the Spencer Stein Collateral) in which Lender has a senior lien or security interest until all claims of Lender have been paid in full. The DIP Financing liens granted to the Lender pursuant hereto shall not be subject to Sections 510, 549, 550, or 551 of the Bankruptcy Code. No secondary financing or liens will be permitted on the Spencer Stein Collateral without its consent, which consent cannot be unreasonably withheld.

**SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS:** The obligations of the Debtors pursuant to the DIP Financing (the "DIP Financing Obligations") shall be authorized and approved by the Bankruptcy Court, pursuant to section 364(c)(1) of the Bankruptcy Code, as constituting claims with a priority over all administrative expenses of the kind specified in sections 503(b) or 507(b) of Bankruptcy Code (the "DIP Superpriority Claims"), subject only to the Carve-Out (as defined in this Term Sheet).

**REPORTING REQUIREMENTS:** All monthly budgets and all reports and disclosures to be delivered to Lender under the Cash Collateral Order shall be delivered to Lender. Site Inspection Lender shall maintain the right to have one of its representatives conduct an on-site inspection of the Borrower's Property.

**EVENTS OF DEFAULT:** The following are "Events of Default" under this Term Sheet:
1. The failure by the Debtor to perform or comply with any term of this Term Sheet or any interim or final orders entered by the Bankruptcy Court approving this Term Sheet.
2. The cessation of this DIP Financing to be in full force and effect or the DIP Financing being declared by the Court to be null and void, or the validity or enforceability of the DIP Financing being contested by the Debtor or the Debtor denying in writing that it has any further liability or obligation under the DIP Financing prior to the full repayment thereof, or the Lender ceasing to have the benefit of the liens granted by any Interim DIP Order or Final DIP Order.
3. Any application by the Debtor seeking an order of the Bankruptcy Court granting to any party other than Lender a lien or security interest in or against assets that constitute DIP Collateral that is senior or equal to the liens and security interests granted to Lender pursuant hereto.
4. Until the DIP Financing obligations contemplated hereunder are repaid in full, the Debtor shall not make any payment of principal or interest or otherwise on account of

4

indebtedness payables other than with respect to (i) obligations under the DIP Financing, (ii) payments to Lender under the Cash Collateral Order, (ii) any payment authorized by an order of the Bankruptcy Court, or (iv) any payment made in accordance with the Budget approved by the Lender.

5. The Debtor fails to make any interest payments due hereunder within three (3) business days of when due.

6. Any Event of Default or occurrence of the Termination Date under the Cash Collateral Order whether or not Lender calls such default or termination.

7. The entry of an order in the Bankruptcy Case granting relief from the automatic stay so as to allow a third party or third parties to proceed against any material (in the Lender's reasonable discretion) property, including the DIP Collateral pledged pursuant to the DIP Financing, of the Debtor or to commence or continue any prepetition litigation against the Debtor involving potential liability not covered by insurance, in excess of $500,000 in the aggregate.

8. Any non-monetary, judgment or order with respect to a post-petition event shall be rendered against the Debtor which does or would reasonably be expected to (i) cause a material adverse change in the financial condition, business, prospects, operations or assets of the Debtor or (ii) have a material adverse effect on the rights and remedies of the Lender hereunder, and there shall be a period of ten (10) consecutive days during which a stay of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect.

9. Any Interim DIP Order or Final DIP Order entered in this case being amended or modified without the consent of the Lender.

**506(C) WAIVER:** Subject to the entry of the Final DIP Order, no costs or expenses of administration of the Bankruptcy Case or any future proceeding that may result therefrom, including liquidation in chapter 7 or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or Cash Collateral pursuant to Bankruptcy Code sections 506(c), 552(b) or 105(a) or any similar principle of law without the prior written consent of the Lender.

**CARVE-OUT:** This Term Sheet provides for a "Carve Out." The Carve-Out claims are senior to the liens and superpriority administrative expenses granted to the Lender and are defined to mean: (i) all unpaid fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code, (ii) after the occurrence and during the continuance of an Event of Default (as defined in this Term

5

and (ii) following delivery by the Lender to the professionals retained by the Debtor and the Committee of a written notice (the "Carve-Out Trigger Notice") advising that such Event of Default has occurred, all allowed and unpaid professional fees and out-of-pocket disbursements incurred by the Debtor and the Committee on and after delivery of the Carve-Out Trigger Notice, that remain unpaid subsequent to the payment of such fees and expenses from available funds remaining in the Debtor's estate for such creditors, in an aggregate amount not exceeding $250,000 (it being understood that such amount shall be made available without regard to the existence of any unused retainer held by any professional), and (iii) all allowed and unpaid professional fees and disbursements (regardless of when such fees and disbursements become allowed by order of the Court) incurred or accrued by the Debtor and the Committee at any time prior to the delivery of a Carve-Out Trigger Notice, in an aggregate amount not exceeding the budgeted amounts for such unpaid professional fees and disbursements as reflected in the Budget (it being understood that such amounts shall be made available without regard to the existence of any unused retainer held by any professional), in each of the foregoing clauses (ii) and (iii), to the extent allowed by the Court; provided, however, that nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses, reimbursement or compensation described in clauses (ii) and (iii), and provided further that the Carve-Out shall not reduce the amounts payable to the Lender under the DIP.

**CREDIT BIDDING:** Following entry of the Interim DIP Order or the Final DIP Order, the Lender shall have the unqualified right to credit bid up to the full amount of the applicable outstanding DIP Financing obligations in any sale of the DIP Collateral (or any part thereof).

**VALID LIENS:** The security interests granted to Lender hereunder shall be deemed valid, binding, enforceable, non-avoidable, and automatically perfected as of the date of entry of any interim or final order approving the DIP Financing, without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, on the DIP Collateral, whether now owned or hereafter acquired or existing and wherever located, of the Debtors and the Debtors' "estates" (as created pursuant to section 541(a) of the Bankruptcy Code), and all products, proceeds and supporting obligations of the foregoing, whether in existence on such date or thereafter created, acquired, or arising and wherever located.

6

AGREED AND ACCEPTED THIS 23rd DAY OF APRIL, 2020

ELEMENTAL PROCESSING, LLC

By: _____

Its: _____CFO_____

LENDER

By: _____Stein, or assignee_____

Its: _____Individual_____